**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| BETTY GAYDOS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:21-CV-388-SPM |
| ) | |
| GULLY TRANSPORTATION, INC., et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Stephen Johnson's Motion for Stay of Civil Proceedings Due to Pending Parallel Criminal Proceedings or, in the Alternative, that All Discovery Directed to Defendant Johnson be Stayed Pending the Outcome of the Parallel Criminal Proceeding ("Motion to Stay Proceedings") (Doc. 56) and Defendant Johnson's Motion for Protective Order to Stay Deposition (Doc. 58) ("Motion to Stay Deposition"). The motions have been fully briefed. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 22). For the following reasons, the motions will be granted.

I.  **BACKGROUND**

This is an action for wrongful death arising out of a motor vehicle accident that occurred on January 19, 2021. On April 2, 2021, Gary Gaydos filed the instant lawsuit related to his injuries from a motor vehicle accident. On April 17, 2021, Mr. Gaydos died, and his wife, Betty Gaydos, was substituted as the plaintiff. In the First Amended Complaint (Doc. 25), she alleges that on January 19, 2021, Mr. Gaydos was operating a vehicle on Highway 270 when his vehicle was rear-ended by a tractor-trailer owned by Defendant Gully Transportation, Inc. ("Gully") and driven by

Stephen Johnson, an employee of Gully operating the truck in the course of his employment. Plaintiff alleges that this motor vehicle caused severe injuries to Mr. Gaydos and eventually caused his death. Plaintiff asserted eight counts: (I) Negligence against Defendant Johnson; (II) "Statutory Employment/Logo/Lease Liability" against Defendant Gully; (III) Vicarious Liability against Defendant Gully; (IV) Negligence against Defendant Gully based on failure to follow various federal safety regulations applicable to motor carriers; (V) Direct Negligence—Negligent hiring and/or retention against Defendant Gully; (VI) Direct Negligence —Negligent Entrustment against Defendant Gully; (VII) Direct Negligence—Negligent Training against Defendant Gully; and (VIII) Direct Negligence—Negligent Supervision against Defendant Gully. Count II was subsequently dismissed.

Defendants have admitted that Defendant Johnson was negligent in striking the rear of Mr. Gaydos's vehicle and in failing to keep a careful lookout. They have also admitted that Defendant Gully is vicariously liable for Defendant Johnson's negligence and that Mr. Gaydos was injured in the accident. There are still disputed issues regarding punitive damages and regarding the claims against Defendant Gully other than those based on respondeat superior.

On March 15, 2022, Defendant Johnson and his attorney received a Notice to Appear on April 13, 2022, in the Circuit Court of St. Louis County, Missouri, in Cause No. 22SL-CR01689. Defendant is being charged with a Class A Misdemeanor—operating a motor vehicle in a careless and imprudent manner—involving an accident, Mo. Rev. Stat. § 304.012. If convicted, he could receive up to a year in prison and could lose his commercial driver's license. This was Defendant Johnson's first indication that he was being charged with criminal conduct arising out of the accident. The charge is dated January 9, 2022, which was almost a year after the accident.

On March 25, 2022, Plaintiff filed the instant motions. In the Motion to Stay Proceedings, Defendant Johnson requests "that all proceedings in this matter as to Defendant Johnson be stayed or, in the alternative, that any discovery directed to Johnson be stayed, including, but not limited to, Defendant Johnson responding to written discovery directed to Defendant Johnson, appearing for deposition, responding to or complying with any other discovery permitted under the federal Rules, and proceeding to trial, unless and until the parallel criminal proceedings are completely disposed of." (Doc. 56, at 4-5). In the Motion to Stay Deposition, Defendant Johnson requests that the Court enter an order staying the deposition of Defendant Johnson under the Federal Rules until such time [as] the parallel proceedings are completely disposed of." (Doc. 58, at 5). Plaintiff opposes both motions.

## II. DISCUSSION

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936). "How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id.* at 254-55. *Accord Boswell v. Panera Bread Co.*, 311 F.R.D. 515, 526 (E.D. Mo. 2015), *aff'd*, 879 F.3d 296 (8th Cir. 2018).

The Fifth Amendment does not always require a stay of a civil case until factually related criminal proceedings are concluded, and such a stay "has been characterized as an extraordinary remedy." *Aldridge v. City of St. Louis, Missouri*, No. 4:18-CV-1677 CAS, 2020 WL 223928, at *3 (E.D. Mo. Jan. 15, 2020) (quotation marks omitted). However, such a stay is "sometimes warranted." *Koester v. American Republic Invs., Inc.*, 11 F.3d 818, 823 (8th Cir. 1993). "[T]o

warrant a stay, defendant must make a strong showing either that the two proceedings are so interrelated that he cannot protect himself at the civil trial by selectively invoking his Fifth Amendment privilege, or that the two trials will so overlap that effective defense of both is impossible." *Id.* (internal citation omitted). "[T]he strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter. The noncriminal proceeding, if not deferred, might undermine the party's Fifth Amendment privilege against self-incrimination, expand rights of criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b), expose the basis of the defense to the prosecution in advance of criminal trial, or otherwise prejudice the case." *Sec. & Exch. Comm'n v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375-76 (D.C. Cir. 1980). *Accord Kozlov v. Associated Wholesale Grocers, Inc.*, No. 4:10-cv-03211, 2011 WL 3320972, at *2 (D. Neb. Aug. 2, 2011); *S.E.C. v. Brown*, No. CIV. 06-1213PAMJSM, 2007 WL 4192000, at *2 (D. Minn. July 16, 2007), *aff'd*, No. CIV. 06-1213JRTFLN, 2007 WL 4191998 (D. Minn. Nov. 21, 2007).

"The decision whether to stay civil litigation in deference to parallel criminal proceedings is discretionary and requires the Court to 'assess and balance the nature and substantiality of the injustices claimed on either side.'" *Aldridge*, 2020 WL 223928, at *3 (quoting *General Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1214-15 (8th Cir. 1973)). The Eighth Circuit has not identified specific factors for Courts to consider in making this decision. However, district courts in the Eighth Circuit have frequently applied the factors forth by the Ninth Circuit in *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324-25 (9th Cir. 1995). *See, e.g., Aldridge*, 2020 WL 223928, at *3-*4 (E.D. Mo. Jan. 15, 2020) (applying *Keating* factors); *White v. Feaman*, No. 4:18-CV-00518-NCC, 2018 WL 5831261, at *2 (E.D. Mo. Nov. 7, 2018) (same); *Edwards v. Thomas*,

No. 4:19-CV-4018, 2020 WL 888538, at *3 (W.D. Ark. Feb. 24, 2020) (same). Under *Keating*, the court considers five factors:

> (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation.

*Keating*, 45 F.3d at 324-25. [1]

At the outset, the Court notes that because the civil case arises from the same incident that gave rise to criminal charges against the Defendant, there is substantial overlap between the facts that underlie the criminal charge (that Defendant Johnson was distracted while driving and struck the rear of another vehicle) and the facts that underlie the civil case (that Defendant was driving negligently and demonstrated deliberate and flagrant disregard for the safety of others). Thus, this case is at least possibly within the category of cases the Eighth Circuit has recognized that a stay might be warranted because either "the two proceedings are so interrelated that he cannot protect himself at the civil trial by selectively invoking his Fifth Amendment privilege, or . . . the two trials will so overlap that effective defense of both is impossible." *Koester*, 11 F.3d at 823. The Court will consider each of the *Keating* factors to determine whether a stay is warranted in this case.

### A. Plaintiff's Interests

The Court first considers "the interest of the plaintiff[] in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiff[] of a delay."

---

[1] Defendant Johnson cites an alternative set of factors used in *S.E.C. v. Gerhardt*, No. 407CV270 JCH, 2007 WL 1452236, at *2 (E.D. Mo. May 15, 2007). The two sets of factors are substantially similar, and the Court's analysis and conclusions would be the same under the *Gerhardt* factors.

*Keating*, 45 F.3d at 325. Plaintiff argues that a delay could affect the parties' ability to keep the deadlines and trial date in the Court's scheduling order, that a delay could result in impeding Defendant Johnson's memories of the event, and that a delay introduces a risk that Defendant Johnson may relocate or become ill. Defendants argue that the prejudice to Plaintiff of a stay directed to Johnson would be de minimis, because Defendant Johnson has already admitted negligence and because Plaintiff can still proceed with the claims against Defendant Gully.

As other courts have recognized, a plaintiff "ha[s] a legitimate interest in the expeditious resolution of [his or her] case." *Ruszczyk as Tr. for Ruszczyk v. Noor*, 349 F. Supp. 3d 754, 760 (D. Minn. 2018) (quoting *Tr. of Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1140 (S.D.N.Y. 1995)). The Court acknowledges that granting a stay of discovery as to Defendant Johnson will impair Plaintiff's ability to obtain some of the discovery she seeks and to resolve her case. On the other hand, that is true in any case in which a stay is sought. Moreover, because Defendants have already admitted negligence and liability, and because discovery may still proceed as to Defendant Gully, it appears that the only issue in the case to be significantly affected by a stay against Defendant Johnson is whether punitive damages may be available; this mitigates the prejudice significantly. In addition, there may be some benefit to Plaintiff from the stay, because the criminal case may reduce the scope of necessary discovery in the civil case. Finally, the burden on Plaintiff may be tempered somewhat by requiring the parties to keep the Court informed periodically as to the status of the state criminal proceedings and giving the Court the opportunity to reweigh the propriety of the stay. *See Edwards*, No. 4:19-CV-4018, 2020 WL 888538, at *4 (requiring the parties to keep the Court informed periodically as to the status of the state criminal proceeding to temper any burden a stay might impose on the plaintiff).

For all of the above reasons, the Court finds that this factor weighs against granting a stay, but not particularly heavily. *See, e.g.*, *id.* (granting stay after finding this factor weighed only slightly in favor of a stay where there was significant factual overlap between the civil case and the criminal case, and where the defendant had been indicted and the criminal trial would "hopefully" occur in the coming months; noting that there might be some benefits to the plaintiff, including the possible reduction in the scope of discovery necessary in the civil case).

### B. Burden on Defendant

The Court next considers the "burden which any particular aspect of the proceedings may impose on defendant[]." *Keating*, 45 F.3d at 325. Defendant Johnson argues that he will suffer substantial prejudice and irreparable harm if he is compelled to testify and/or respond to discovery requests in this case. Specifically, he argues that if discovery against him is not stayed, he will be placed in a "lose-lose" situation of having to choose between (1) defending himself in this proceeding, which may incriminate him in the criminal proceeding, or (2) exercising his Fifth Amendment rights, which will effectively forfeit his defense in this matter. He notes that if he does invoke the Fifth Amendment privilege in this civil case, he risks an adverse inference in the civil case. *See, e.g., Mitchell v. United States*, 526 U.S. 314, 328 (1999) (recognizing "the prevailing rule that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them, at least where refusal to waive the privilege does not lead automatically and without more to the imposition of sanctions" (quotation marks and citation omitted)); *Johnson v. Missouri Bd. of Nursing Adm'rs*, 130 S.W.3d 619, 631 (Mo. Ct. App. 2004) (finding that a party's "refusal to answer pertinent questions on Fifth Amendment grounds justified an inference that: (a) if she had answered truthfully, the answers would have been unfavorable to her; or (b) would have corroborated testimony given by the

opposing side's witnesses on the subject matter of the questions") (citations omitted). In her opposition, Plaintiff argues that to the extent that Defendant Johnson is concerned about testifying to facts related to the criminal charge, he can assert the Fifth Amendment as to those facts, and that the fact that this might lead to adverse inferences in this case is not sufficient to justify a stay.

Courts considering similar situations involving substantial overlap between criminal and civil cases have frequently found that this factor weighs heavily in favor of granting a stay, because absent a stay, defendants will likely have to choose between invoking their Fifth Amendment rights, thereby prejudicing themselves in the civil case, and not invoking their Fifth Amendment rights, thereby prejudicing themselves in the criminal case. *See, e.g.*, *Busey Bank v. Benja Inc.*, No. 4:20CV1473 HEA, 2021 WL 694824, at *2 (E.D. Mo. Feb. 23, 2021) (finding this factor weighed "strongly in favor of a stay," and granting a stay, where the criminal prosecution and the civil case arose out of the same facts; noting that the defendant had "made a 'strong showing' the actions are 'so interrelated' he cannot protect himself in the civil case by selectively invoking his Fifth Amendment privilege, and the trials would so overlap that effective defense of both is impossible."); *Edwards*, 2020 WL 888538, at *5 (finding this factor weighed in favor of a stay, and granting a stay, where the defendant "faces serious charges of negligent homicide for the same conduct encompassed in claim one of Plaintiff's complaint"; stating, "Absent a stay, [the defendant] would face the choice of fully participating in civil discovery and potentially incriminating himself in the criminal case or invoking his Fifth Amendment privilege and allowing a civil jury to possibly draw negative inferences against him. If discovery is not deferred, it might undermine [the defendant]'s Fifth Amendment privilege against self-incrimination, expand rights of criminal discovery beyond the limits of Arkansas's applicable rules of criminal procedure, expose the basis of the defense to the prosecution in advance of the criminal trial, or otherwise prejudice the case.");

*White v. Feaman*, No. 4:18-CV-00518-NCC, 2018 WL 5831261, at *3 (E.D. Mo. Nov. 7, 2018) (finding this factor weighed strongly in favor of a stay, and granting a limited stay, where the defendant had been indicted and where "the criminal prosecution and civil claims arise out of the same facts and involve nearly identical issues and witnesses"); *Garrett v. Cassity*, No. 4:09CV01252 ERW, 2011 WL 2689359, at *4 (E.D. Mo. July 11, 2011) (granting a stay and recognizing, in another case with a "clear overlap" between the civil and criminal cases, that if a stay were granted, the defendants "would not be placed in a position in which they would have to choose between invoking their Fifth Amendment rights against self-incrimination, potentially prejudicing themselves in the civil case, and waiving that privilege, perhaps leading to criminal liability").

For all of the above reasons, the Court agrees with Defendant Johnson that this factor weighs heavily in favor of granting a stay.

### C. The Court's Interests

The Court next considers 'the convenience of the court in the management of its cases, and the efficient use of judicial resources." *Keating*, 45 F.3d at 325. Defendant also argues that forcing him to respond to discovery requests or testify in depositions while knowing that he will invoke his Fifth Amendment privilege would be a waste of the parties' resources and time. Plaintiff argues that granting the instant motion will place the Court's case management order in jeopardy and delay the trial in this case.

The Court recognizes its "responsibility to keep its calendar moving to provide litigants expeditious determination of their cases." *Edwards*, 2020 WL 888538, at *5 (quoting *White v. Mapco Gas Prod., Inc.*, 116 F.R.D. 498, 502 (E.D. Ark. 1987)). On the other hand, "stays can 'promote efficiency and avoid duplication as this Court and the parties would have the benefit of

the transcripts and rulings in the criminal action.'" *Ruszczyk*, 349 F. Supp. 3d at 763 (quoting *Crawford & Sons, Ltd. v. Besser*, 298 F.Supp.2d 317, 319 (E.D.N.Y. 2004)). Additionally, "the resolution of the criminal case might reduce the scope of discovery in th[is] civil case or otherwise simplify the issues." *Id.* at 763-64 (quoting *Brock v. Tolkow*, 109 F.R.D. 116, 120 (E.D.N.Y. 1985)).

The Court finds that this factor weighs slightly in favor of a stay, if at all. Although a stay will delay resolution of this case, the Court does not anticipate that the stay will impose any other burdens on the Court. Moreover, the discovery obtained in the criminal proceedings may help streamline the civil proceedings. *See, e.g.*, *White*, 2018 WL 5831261, at *3 (finding this factor weighed in favor of a stay where "the Court does not anticipate the stay will require any additional any additional resources on its behalf" and "the discovery obtained in the criminal proceedings may help streamline the civil proceedings."); *Ruszcyk*, 349 F. Supp. 3d at 764 (finding that a stay "would conserve scarce judicial resources").

The Court also notes that the burden on the Court, like the burden on Plaintiff, may be tempered by requiring the parties to keep the Court informed periodically as to the status of the state criminal proceedings and giving the Court the opportunity to reweigh the propriety of the stay. *See, e.g.*, *Ruszczyk*, 349 F. Supp. 3d 754, 767-68 (D. Minn. 2018) (requiring Defendant to update the Court every 60 days regarding the status of the criminal proceeding in order to reduce the burden of the stay).

### D.  The Interests of Non-Parties

The Court next considers "the interests of persons not parties to the civil litigation." *Keating*, 45 F.3d at 325. Neither party has identified any non-parties whose interests will be

significantly affected by the outcome of the civil or criminal cases. The Court therefore finds this factor is neutral.

### E.  The Interests of the Public

Finally, the Court considers "the interest of the public in the pending civil and criminal litigation." *Keating*, 45 F.3d at 325. Neither party has identified any public interest that will be significantly affected by the outcome of the civil or criminal cases. The Court therefore finds this factor is neutral.

### III.  CONCLUSION

After careful consideration of the above factors, the Court finds that the burden on Defendant Johnson of not granting a stay substantially outweighs the burden on Plaintiff of granting a stay. Thus, the Court finds that a stay of discovery directed to Defendant Johnson is warranted. The Court will also require Defendant to update the Court periodically regarding this status of the criminal case, which will give the Court the opportunity to monitor its progress and determine whether the length of the stay or other changed circumstances may require the Court to reweigh the relevant factors. Accordingly,

**IT IS HEREBY ORDERED** that Defendant Johnson's Motion for Stay of Civil Proceedings Due to Pending Parallel Criminal Proceedings or, in the Alternative, that All Discovery Directed to Defendant Johnson be Stayed Pending the Outcome of the Parallel Criminal Proceeding (Doc. 56) is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant Johnson's Motion for Protective Order to Stay Deposition (Doc. 58) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Court enters a limited stay of discovery in this case, as follows: all discovery directed toward Defendant Stephen Johnson is stayed pending

conclusion of the Missouri state criminal case against him, Case No. 22SL-CR01689

**IT IS FURTHER ORDERED** that if Defendant's criminal trial is resolved via dismissal, a not guilty verdict, or sentencing following a guilty plea or guilty verdict, Defendant shall file a memorandum with this Court so stating within **fourteen (14) days** of any of those occurrences.

**IT IS FURTHER ORDERED** that, no later than **60 days** after the date of this Memorandum and Order, and every 60 days thereafter, Defendant Johnson shall file a memorandum with the Court describing the current status of the criminal case, the trial date, and any other relevant information.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 12th day of May, 2022.